IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TORIANO PETERSON,

    Plaintiff,

v.                                    Case No. 5:14cv265-MW/CJK

CORRECTIONS CORPORATION
OF AMERICA,

    Defendant.

_____/

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]**

Pending before the Court is Defendant's Motion for Summary Judgment, ECF No. 55.

This is an employment discrimination case. Toriano Peterson, a male, sues his former employer, the Corrections Corporation of America ("CCA"), for gender discrimination and retaliation. Peterson alleges that after he reported that he was sexually harassed by a female coworker, CCA discriminated and retaliated against him by moving him to the night shift.

---

[1] This order is intended to clarify the reasoning of this Court's order of September 17, 2015, ECF No. 72. The legal effect of that order remains unchanged.

1

After careful review, this Court finds that Peterson's discrimination claim fails as a matter of law, but there are disputed issues of material fact on the retaliation claim. Summary judgment is therefore due to be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Toriano Peterson, a male, began working as a Correctional Officer at the Bay Correctional Facility in 1998. ECF No. 57-1 at 153. In January 2013, another officer, Christopher Jones, invited Peterson to join a conversation with him and a third officer, Miranda Uphoff. *Id.* at 212-213. Uphoff made several comments to Peterson that he found offensive—she told Peterson that he was on her "fuck buddy list," shared the intimate details of her sex life with her boyfriend, told him that her boyfriend "doesn't fuck [her] right," and said that she is forced to finish masturbating in the bathtub. *Id.* at 200-07. She later had another discussion with Peterson during which she repeatedly told him that he was "sexy," *id.* at 202, and she repeatedly tried to contact Peterson by phone for casual conversation, *id.*

Peterson reported Uphoff's sexual harassment in a verbal complaint on January 21, 2013, and filed a formal incident report on January 27, 2013. *Id.* at 167-168, 191; ECF No. 57-2. Uphoff then filed an incident report against Peterson, accusing him of sexual harassment as well. ECF No. 57-6. Two supervisors had a

2

meeting with Uphoff and Peterson and immediately afterward transferred Uphoff to a different building. ECF No. 57-1 at 165, 170-72.

Following the meeting, Peterson and Jones continued to complain about one another. *Id.* at 162, 216; ECF No. 57-8 at 39-40. A supervisor met with both Peterson and Jones on February 1, 2015, and after the meeting separated the two and moved them both to the night shift. ECF No. 57-1 at 174-178, 216.

Peterson worked the night shift for approximately six weeks before he was transferred back to his old schedule. *Id.* at 166; ECF No. 64-10.

Peterson's Second Amend Complaint alleges two claims against CCA.[2] Count I alleges disparate treatment gender discrimination.[3] Count II alleges retaliation.

## II. DISCUSSION

CCA argues that both of Peterson's claims—gender discrimination and retaliation—fail as a matter of law. It argues that the undisputed facts show that Peterson has not established a prima facie case of discrimination or retaliation and

---

[2] Peterson also brought suit against a second defendant, the Geo Group, which became his employer after he was laid off from CCA after CCA's contract to manage the Bay Correctional Facility expired. ECF No. 57-1 at 19-21, 239. Peterson settled his claims against the Geo Group. ECF No. 61.

[3] To the extent that Count I attempts to set forth a hostile work environment discrimination claim, that claim has been abandoned because Peterson failed to address it in response to the motion for summary judgment.

that even if he did, CCA's legitimate actions were not a pretext for discrimination or retaliation.

It is unlawful for an employer to discriminate against employees in hiring or firing on the basis of gender. *See* 42 U.S.C. § 2000e-2; § 760.10, Fla. Stat.[4] Additionally, it is illegal for an employer to retaliate against employees who have formally complained of discrimination based on their gender. 42 U.S.C. § 2000e-3; § 760.10, Fla. Stat.

Peterson has not presented any direct evidence of gender discrimination or retaliation; he relies only on circumstantial evidence. Therefore, his claims may be analyzed under the circumstantial evidence framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981). Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). When the plaintiff establishes a prima facie case, which creates the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the employer satisfies its burden by

---

[4] The Florida Civil Rights Act, Chapter 760, was patterned after Title VII. Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII. *See Wilbur v. Corr. Servs. Corp.,* 393 F.3d 1192, 1195 (11th Cir.2004).

articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. *Id.*

However, establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Rather, the plaintiff will always survive summary judgment if she presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. *Id.* A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. *Id.*

### A. Count I—Disparate Treatment Gender Discrimination

CCA first argues that Peterson did not establish a prima facie case for discrimination, and even if he did, CCA's legitimate reasons for their actions were not a pretext to discriminate against him.

Here, assuming without deciding that Peterson could make out a prima facie case of discrimination,[5] he has not proffered any evidence from which a jury could

---

[5] Although both parties have submitted supplemental arguments regarding whether Peterson established a prima facie case of discrimination, *see* ECF No. 68; 70, resolution of the

5

reasonably infer that CCA's decision to move him to the night shift was a mere pretext to discriminate against him based on his gender.

To show pretext, a plaintiff must demonstrate that the proffered reason was not the true reason for the adverse action, either by directly showing that the discriminatory reason more likely motivated the decision or by indirectly showing that the proffered explanation is unworthy of credence. *Jackson v. State of Alabama State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir. 2005). A plaintiff must produce enough evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable. *Id.*

The crux of Peterson's argument is that when they accused each other of sexual harassment, Uphoff—a female—was moved to a different building to which she had previously asked to be transferred anyway, while Peterson—a male—was moved to the undesirable night shift. Other than the ostensibly disparate treatment of Peterson and Uphoff with respect to their shift reassignments, Peterson has produced no evidence whatsoever to imply that the decisionmakers were motivated by anti-male animus in making the decision and that the decision was merely a pretext to invidiously discriminate against Peterson because of his gender.[6]

---

issue is not necessary to decide the motion. However, the Court notes that whether Peterson states a prima facie case is, at best, problematic.

[6] Both of the individuals who may have been responsible for the decision to move Peterson to the night shift, Ronnie Holland and Luis Rosa, are males. And, while this does not preclude an inference of discrimination, courts have noted that "it is extremely difficult for a

Moreover, CCA proffered a legitimate reason for the apparent disparate treatment. It is undisputed that CCA moved Peterson to the night shift a few days after it moved Uphoff to a different building, ECF No. 57-1 at 165, 174-76, and CCA claims it did so in order separate Peterson and Chris Johnson, who continued to bicker with one another after Uphoff was transferred. *See* ECF No. 64-1, at 40; ECF No. 57-15 at 16. [7] Peterson offered no meaningful evidence to undermine or contradict this contention (at least in the context of gender discrimination), other than his own rank speculation. *See* ECF No. 57-1 at 165-166 ("Q: Right. But you stayed where you were and she was transferred out. A: (Indicating affirmatively.) Q: If Chief Holland said the reason he moved you and Mr. Jones to midnight is because the two of you were bickering . . . would you disagree with that? . . . A: I would disagree."). [8] The mere fact that Uphoff received a more desirable

---

plaintiff to establish discrimination where the allegedly discriminatory decision-makers are within the same protected class as the plaintiff." *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1314 at n. 20 (N.D. Ga. 2009) (citations and quotations omitted).

[7] Neither party addresses whether the information in the independent investigator's report, which is certified by CCA's custodian of records, ECF No. 15, constitutes inadmissible hearsay. Accordingly, this Court will assume, without deciding, that the information in the report either falls under a hearsay exception or is "reducible to admissible form" at trial and thus can be relied upon in ruling on summary judgment. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.").

[8] Peterson insinuates that Holland's intentions in moving him to the night shift were instead (1) because it was easier than moving both Uphoff and her boyfriend; and (2) because of the sexual harassment complaint that he filed. ECF No. 65 at 5. However, both of these are gender-neutral reasons for moving him. Moreover, because Peterson conflates his argument on

alternative shift than Peterson is not enough, standing alone, for a reasonable jury to conclude that CCA's decision was a mere pretext for its officers to discriminate against Peterson because he is a man.

In sum, Peterson has put forward no evidence to suggest that CCA's stated explanation for his move to night shift was "not believable" and that the move was merely a pretext to discriminate against him based on his gender. Summary judgment on Count I is therefore appropriate.

## B. Count II—Retaliation

CCA next argues that Peterson did not establish a prima facie case for retaliation, and even if he did, CCA's legitimate reasons for their actions were not a pretext to discriminate against him.

### *1.  The Prima Facie Case*

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the expression and the adverse action. *Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501, 507 (11th Cir. 2000).

---

pretext in the discrimination and retaliation contexts, *id.* at 13-16, it is difficult to discern what, if any, evidence Peterson is actually arguing implies pretext to discriminate based on gender.

8

Here, Peterson has presented enough evidence of retaliation to make out a prima facie case.

First, Peterson engaged in protected expression. Peterson complained to his supervisors that he was being sexually harassed by a co-worker and thus subjected to a hostile work environment. Title VII protects individuals who have filed informal complaints internally to their supervisors. *Saffold v. Special Counsel, Inc.*, 147 F. App'x 949, 951 (11th Cir. 2005).

CCA argues that Peterson's belief that he was subjected to a hostile work environment was not reasonable. An employee who seeks protection under the opposition clause must have a "good faith, reasonable belief" that her employer has engaged in unlawful discrimination. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law. *Id.*

In order to prevail on a hostile work environment claim, a plaintiff must, among other things, show that the harassment was sufficiently "severe or pervasive" to alter the conditions of her employment and create an abusive working environment. *Watkins v. Bowden*, 105 F.3d 1344, 1355 (11th Cir. 1997). In assessing the objective component, courts consider the totality of the circumstances, including (1) the frequency of the conduct; (2) the severity of the

conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002).

Here, taking the disputed facts in the light most favorable to him, Peterson engaged in protected activity because he had a good faith, reasonable belief that he was subjected to a hostile work environment. That belief was no doubt based in large part on Uphoff's vulgar and unwelcome statements to Peterson on January 10: a comment that Peterson was on Uphoff's "fuck buddy list"; another comment that Peterson was in fact "number one or two" on that list; and a graphic discussion of Uphoff's sex life, including statements that her boyfriend "didn't fuck [her] right" and that she had to "finish masturbating in the bathtub." ECF No. 57-1 at 201.

Had that incident been the sole basis for Peterson's belief that he was subjected to a hostile work environment, perhaps his belief would not be objectively reasonable. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that "isolated incidents (unless extremely serious) will not amount to" a hostile work environment); *see also Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (holding that a single incident of "fleeting contact, unaccompanied by sexual suggestiveness or aggression" was not enough

to make belief in "severe and pervasive harassment objectively reasonable"). But that incident was neither the beginning nor the end of Uphoff's inappropriate behavior towards Peterson. On multiple occasions before January 10, Uphoff told Peterson that he was sexy. ECF No. 57-1 at 206-07. Uphoff also called him "sexy" multiple times on January 16 and continued to attempt to communicate with him by phone. ECF No. 57-1 at 201-02. The record does not reveal how frequent those attempts were or the nature of Uphoff's remarks to Peterson on the occasions, if any, on which she reached him, but Peterson stated that Uphoff "continuously called" him. *Id.* at 202. Given that the evidence must be viewed in the light most favorable to Peterson, and that all reasonable inferences must be drawn in his favor, the lack of details about those phone calls does not work against him. *See Mulkey v. Bd. Of Comm'rs of Gordon Cnty.*, 488 F. App'x 384, 389-90 (11th Cir. 2012) (multiple relatively minor incidents of sexual harassment, together with one larger incident, enough to support objectively reasonable belief in hostile work environment even when "time line of the [other incidents] was less than clear" from the record).

While none of these incidents (aside from possibly the January 10 incident) would, on its own, support an objectively reasonable belief in a hostile work environment, they must be considered together. Uphoff's aggressively smutty talk of January 10, her multiple inappropriate references to her perception of Peterson's

sexiness both before and after that date, and her repeated attempts at phone communication with Peterson together constitute behavior "close enough" to sexual harassment for Peterson's belief that it *was* actionable sexual harassment to be objectively reasonable.[9] *See Clover*, 176 F.3d at 1351.

Peterson also suffered an adverse employment action. In the context of a Title VII retaliation claim, a materially adverse action is one that might well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008). This standard is "more liberal" than the standard for an adverse employment action in the substantive discrimination context. *Id.*

Here, CCA's action of transferring Peterson to the undesirable night shift, standing alone, could dissuade a reasonable employee from engaging in protected activity and thus constitute and adverse employment action.[10] *See Booth v. Pasco Cnty., Fla.*, 829 F. Supp. 2d 1180, 1191 (M.D. Fla. 2011) ("Several cases have found that an involuntary transfer to a significantly less desirable location, and/or

---

[9] It is difficult to believe that, were the genders of Peterson and Uphoff reversed, CCA's argument that Peterson's belief was objectively unreasonable would even seem defensible.

[10] Peterson also put forth several other pieces of evidence in support an adverse employment action. CCA filed a motion to strike some of this evidence, ECF No. 68, arguing that it was improperly before the Court. This Court summarily denied the motion, ECF No. 69. Because the transfer to the night shift alone constitutes an adverse employment action, the Court need not address the additional pieces of evidence at this time. This Court notes that CCA has again raised in the issue in a motion in limine, ECF No. 71; the Court will revisit the issue, if necessary, if and when it addresses that motion.

shift can alone be sufficient to constitute an 'adverse employment action' under the new relaxed standard announced in *Burlington*.").

Finally, Peterson has shown a causal connection between the protected activity and the adverse employment action. The temporal proximity between Peterson's complaint of sexual harassment and the transfer to the night shift is sufficient to establish a causal connection. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (noting that one-month gap between protected activity and adverse event has been held sufficient to establish causal connection).

### 2. *Pretext*

CCA has, again, put forth a legitimate, non-discriminatory reason for its actions against Peterson: it claims that it did so to separate Peterson and Chris Johnson, who continued to bicker in the wake of Peterson's sexual harassment allegation.

Here, however, Peterson has put forth enough evidence of retaliatory animus that a reasonable jury could infer that CCA's decision to transfer him to the night shift could have been a pretext to retaliate against him for complaining about Uphoff's sexual harassment.

The record, taken in the light most favorable to Peterson, shows that Peterson's supervisors were frustrated and angry that Peterson was pursuing his sexual harassment claim. For example, Correctional Counselor Brenda Johnson

testified that shortly after Peterson made the complaint, Holland made the unusual move of personally asking her to write Peterson up for an unrelated disciplinary infraction. ECF No. 64-4 at 17-18. Chief of Security Ronnie Holland's statement to Peterson and Chris Johnson that "Y'all and this sexual harassment incident got this facility turned upside down," ECF No. 57-1 at 175, as well as his insinuations that he would retaliate if Peterson attempted to go over his head to complain about the hardships caused by being on the night shift, *id.* at 188, could also be construed to show his motivation in moving Peterson to an undesirable shift as punishment for complaining about sexual harassment. Similarly, Chief of Unit Management Luis Rosa's decision to try to talk Peterson out of pursuing the complaint, ECF No. 64-1 at 33; ECF No. 57-1 at 178, could be evidence of his distaste for Peterson's claim.

    A reasonable jury could infer from the statements and actions of CCA's officers regarding its treatment of Peterson—as well as the timing of these actions with respect to his complaint—that CCA decided to move Johnson to the night shift in response to Peterson's protected activity of complaining about sexual harassment. Restated, the record could plausibly be interpreted to show that CCA's supervisors were unhappy and frustrated with Peterson's decision to report Uphoff's sexual harassment, so they swiftly moved him to the undesirable night shift in response.

14

Peterson has thus produced enough evidence of retaliatory animus that reasonable jury could find that CCA's proffered reasons were "not believable" and "not the true reason" for moving him to the night shift, *Jackson,* 405 F.3d at 1289, and that CCA's decision was in fact a pretext to retaliate against him for filing the complaint. Summary judgment as to Count II is therefore denied, and the claim will proceed to trial.

## IV. CONCLUSION

CCA's motion for summary judgment is due to be granted in part and denied in part. Peterson has failed to present any evidence from which a reasonable jury could infer that he was discriminated against because of his gender, and that claim fails as a matter of law. However, a reasonable jury could infer that CCA retaliated against him for complaining that he suffered sexual harassment.

For the reasons stated,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, ECF No. 55, is **GRANTED IN PART, DENIED IN PART.**
2. Defendant's motion is granted as to Count I. Count I is **DISMISSED WITH PREJUDICE.** This Court does *not* direct entry of judgment as to the dismissed claim under Federal Rule of Civil Procedure 54(b).

3. Defendant's motion is **DENIED** as to Count II. Count II will proceed to trial. The Pretrial Conference and Trial shall remain on the calendar as scheduled. ECF No. 53.

**SO ORDERED on September 28, 2015.**

<u>s/Mark E. Walker</u>
**United States District Judge**